UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD BROWN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14 CV 300 RWS |
| ) | |
| DAVID HOWE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff alleges that defendants used excessive force against him in violation of 42 U.S.C. § 1983 while he was an inmate at the Eastern Reception, Diagnostic, and Correctional Center (ERDCC) in Bonne Terre, Missouri. Defendants move for summary judgment on the ground that they are qualifiedly immune from suit. Brown, who is proceeding pro se, opposes summary judgment, and the issues have been fully briefed. Because no genuine issues of material fact remain as to whether defendants violated Brown's constitutional rights, the motion for summary judgment will be granted.

Standards Governing Summary Judgment

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation marks and citation omitted). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does

so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted) .

## Background Facts

During the relevant time period, defendant David Howe was a sergeant (COII) and defendants Bobby Currington, Timmy Jones, Terry Russell, and Jerry Morgan were corrections officers (COIs) at ERDCC. On July 25, 2013, plaintiff was placed on suicide watch by the medical unit and ordered moved to a close observation cell in the administrative segregation unit at ERDCC. Currington was called to the medical unit and assigned to move plaintiff to the close observation cell. Plaintiff's hands were cuffed behind his back for the move. Plaintiff complained about being placed on suicide watch during the walk to the cell. Currington told plaintiff to cooperate, but plaintiff's complaints increased as he got closer to the administrative

segregation unit. By the time plaintiff went through the sally port into the administrative segregation unit, he was loud, resistant, and combative. For this reason, Howe and Russell joined Currington in escorting plaintiff to his cell. Plaintiff continued his disruptive behavior, and some other inmates began shouting to plaintiff in response, which only encouraged plaintiff to become louder. Plaintiff ignored repeated directives to be quiet and cooperate. He then stopped walking and attempted to pull away from Currington, who was positioned behind plaintiff on his left side and holding plaintiff's elbow. Plaintiff admits he "jerked" away from Currington, but claims that it was because Currington was hurting his elbow. He also claims he stopped because his pants were falling down. When plaintiff pulled away, his right shoulder made contact with Howe's chest. Howe was positioned behind plaintiff on his right side. Howe then grabbed plaintiff from behind and took him to the ground. Currington and Russell assisted Howe in controlling plaintiff on the ground. Jones and Morgan, who were stationed on the top walk of the housing unit at the time, then joined Howe, Russell, and Currington. Plaintiff alleges that Russell rammed his knee into the side of his head and that Howe pushed his shoulder down and twisted and pulled his elbow. Plaintiff also alleges that Morgan twisted and pulled on his wrist and fingers. Currington placed leg restraints on plaintiff, who was brought to his feet and escorted to the close observation cell. The medical unit was then called to examine plaintiff for injuries. Plaintiff complained about his wrist and hand, but the examining nurse observed no injuries. An x-ray of plaintiff's right hand, wrist, and fingers on July 31, 2013, revealed no fractures or soft tissue swelling. Howe, Currington, and Russell all suffered injuries as a result of the incident with plaintiff. Plaintiff was subsequently found guilty of two conduct violations for assault based on the injuries suffered by Howe and Currington, and he is no longer eligible for early release from prison.

Defendants provided the Court with video surveillance footage of the incident, which I have reviewed in connection with ruling on the pending motion for summary judgment. There is no sound on the video, and due to the poor quality of the footage it is difficult to determine precisely what happens once plaintiff is taken to the ground. However, the footage does show plaintiff abruptly stopping and pulling away during his cell escort, as well as his subsequent take down by Howe. The video also reveals that the whole incident, from plaintiff's entry into the administrative segregation unit until he was helped to feet while wearing leg restraints, lasted less than two minutes.

## Discussion

Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, Pearson v. Callahan, 555 U.S.

4

223, 235−36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes."  McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted).  "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."  Winslow v. Smith, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotation marks and citation omitted).  "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Nelson v. Correctional Medical Services, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Whitley v. Albers, 475 U.S. 312, 319 (1986) (quotation omitted).  "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."  Id.  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).  "To defeat a

5

claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). "[W]hen an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and [] the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Burns v. Eaton, 752 F.3d 1136, 1139 (8th Cir. 2014) (internal quotation marks and citation omitted).

Here, defendants are entitled to summary judgment because the force used on plaintiff was in a good faith effort to maintain and restore discipline and was not intended to sadistically or maliciously harm plaintiff. Prior to defendants' use of force, plaintiff was loud, resistant to orders to cooperate and quiet down, and disruptive to other inmates on the cell block. Despite plaintiff's refusal to obey their commands, defendants used no force on plaintiff until he stopped walking, jerked away from Currington, and contacted Howe's chest. Given that defendants used no force until necessary to subdue plaintiff and regain control over the situation, no reasonable jury could find that the force was used maliciously and sadistically to cause harm in violation of the Eighth Amendment. Although plaintiff alleged in his complaint that Jones "assisted" in bringing him to the ground, it is undisputed that Jones arrived after plaintiff was already on the ground. Moreover, in his deposition plaintiff admitted that Jones "never do nothing anyway," and he did not testify about any force used against him by Jones. Because liability under § 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights," Madewell v. Roberts, 909

F.2d 1203, 1208 (8th Cir. 1990), Jones cannot be held vicariously liable under § 1983 and is entitled to summary judgment on plaintiff's claims. See Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014).

Although plaintiff complained in his deposition that Currington was "being a jerk" and "overly aggressive" while holding his elbow during the cell escort, "not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37-38 (internal quotation marks and citation omitted). Here, plaintiff was loud, recalcitrant, and refused to obey orders during his cell move. Under these circumstances, no reasonable jury could conclude that Currington's allegedly "aggressive" attitude or his holding of plaintiff's elbow during the transfer (even if it caused plaintiff some discomfort) was intended to maliciously or sadistically cause plaintiff harm, especially where, as here, plaintiff claims no injuries resulting from this action. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. (internal quotation marks and citation omitted). "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. Currington is therefore entitled to summary judgment on plaintiff's Eighth Amendment claim.

In his deposition, plaintiff also admits that he is not complaining about how he was taken to the ground by Howe. Although plaintiff states that Howe pushed his shoulder down and twisted and pulled his elbow once he was on the ground, he testified that Howe was not really "being negative" when he was on the ground. Under these circumstances, no reasonable jury could conclude that Howe violated the Eighth Amendment when he took plaintiff to the ground and then

7

pushed on his shoulder and elbow to bring plaintiff under control once he was on the ground, especially where, as here, plaintiff admits that Howe did not seem to be using excessive force ("being negative" as plaintiff called it) and he claims no injuries resulting from Howe's actions. Howe is therefore entitled to summary judgment on plaintiff's Eighth Amendment claim. The same is true for plaintiff's claims against Russell, who plaintiff admits "fell back" once he was on the ground. Under the circumstances, no reasonable jury could conclude that Russell putting his knee on the side of plaintiff's head after plaintiff was taken to the ground was intended to maliciously or sadistically cause plaintiff harm rather than to assist in restoring discipline and control over plaintiff, especially where, as here, plaintiff admits that Russell "fell back" and he claims no injuries resulting from Russell's actions. Russell is therefore entitled to summary judgment on plaintiff's Eighth Amendment claim.

In his deposition, plaintiff argues that the "heart" of his case is that Morgan bent his fingers back once he was on the ground. Again, however, plaintiff has presented no affirmative evidence that the force used by Morgan, who arrived only after plaintiff was already on the ground, was applied maliciously and sadistically to cause harm rather than to restore discipline in the cell block. There is no dispute that Morgan was on the top walk of the cell block with Jones when plaintiff entered the administrative segregation unit and that he arrived to assist the other correctional officers after plaintiff jerked away and was taken down to the ground by Howe. Plaintiff alleges that Morgan grinned at him while bending his fingers back and later said, "Remember I'm the one that did that to you." Even if true, these allegations are insufficient to prove that the amount of force used by Morgan was violative of the Eighth Amendment, as there is no evidence that the force exceed that needed to restore and maintain order and discipline and regain control of

plaintiff. The surveillance video establishes that the whole incident lasted less than two minutes and that Morgan was not even with plaintiff for the entirety of that time. As soon as plaintiff was secured in leg restraints, he was helped to his feet and escorted to the close observation cell. Plaintiff was examined by the medical unit, but the examining nurse observed no injuries to his wrist or hand. An x-ray of plaintiff's right hand, wrist, and fingers on July 31, 2013, revealed no fractures or soft tissue swelling. Although plaintiff submits an affidavit of another inmate in an attempt to establish that his x-ray results are fabricated, this inmate's testimony is inadmissible hearsay and irrelevant to the issues in this case. There is simply no evidence from which a reasonable jury could infer a malicious motive or find that Morgan violated plaintiff's eighth amendment rights, so Morgan's motion for summary judgment based on qualified immunity must be granted. See Burns, 752 F.3d at 1139-1140.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#39] is granted, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 12th day of May, 2015.